MICHAEL A. CARDOZO
Corporation Counsel of the City of New York
New York City Law Department
Attorneys for the City of New York
100 Church Street
New York, New York 10007
Zachary B. Kass
Tel. 212-788-1186
zkass@law.nyc.gov

**Hearing Date:  April 25, 2012 at 12:00 p.m.**

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

In re:

WILDY NARCISSE,

              Debtor.

Chapter 7
Case No. 96-21345

-----------------------------------------------------------x

### MEMORANDUM OF LAW OF THE CITY OF NEW YORK IN OPPOSITION TO DEBTOR'S MOTION TO REOPEN CHAPTER 7 BANKRUPTCY CASE

**TO THE HONORABLE NANCY HERSHEY LORD**
**UNITED STATES BANKRUPTCY JUDGE:**

        The City of New York (the "City"), by its counsel, MICHAEL A. CARDOZO,

Corporation Counsel of the City of New York, hereby submits this Memorandum of Law (the

"Memorandum") in opposition to the Motion to Reopen Chapter 7 Bankruptcy Case, dated

March 23, 2012 (the "Motion"),  made by Wildy Narcisse ("Narcisse" or the "Debtor"), the

debtor in the above-entitled Chapter 7 case (the "Chapter 7 Case").  In support thereof, the City

respectfully states:

### PRELIMINARY STATEMENT

        In this Motion, the Debtor seeks entry of an order reopening his Chapter 7 Case,

which was closed more than fourteen years ago, in order to add a claim against the City of New

York as an asset.  In support of the Motion, the Debtor submitted an affirmation of his

bankruptcy attorney, Rachel S. Blumenfeld, Esq. (the "Blumenfeld Aff."), dated March 23, 2012, and a memorandum of law, also dated March 23, 2012 (the "Debtor's Memo. Of Law").

As set forth more fully below, the Debtor is not entitled to any of the relief he seeks. In brief, the Debtor has not met the standards for reopening a closed Chapter 7 case under Bankruptcy Code Section 350(b). The Debtor failed to disclose his possible claim against the City in his Chapter 7 Petition, his Schedules and his Statement of Financial Affairs and at his meeting of creditors. The case was administered as a no asset case, and the Debtor received a discharge in 1997. Under those circumstances, the possible claim against the City remains an asset of his bankruptcy estate. However, the Debtor has been prosecuting a personal injury action against the City in state court on his own behalf, and for his own benefit. The Debtor cannot show that his failure to reveal the claim during his Chapter 7 case was in good faith. Furthermore, there will be no benefit to creditors here if the case is reopened. The public interest in the integrity of the bankruptcy process dictates that a bankruptcy court should not grant relief that encourages the concealment of assets by debtors. Accordingly, under the circumstances present here, the Motion should be denied.

## SUMMARY OF RELEVANT FACTS

The facts relevant to the City's opposition to the Motion are set forth in the Affirmation of Jonathan D. Klein, Assistant Corporation Counsel, dated April 13, 2012 (the "Klein Aff."), the documents in the file of the Chapter 7 Case, which are attached to the Klein Affirmation collectively as Exhibit "A," and the docket, which is attached thereto as Exhibit "B." A summary of the relevant facts is set forth below, to provide a context for the arguments to follow.

## I. Background

### A. The Personal Injury Action.

The Debtor is the plaintiff in a personal injury action (the "Personal Injury Action") pending in the New York State Supreme Court (the "State Court"), entitled *Wildy Narcisse v. The City of New York, New York City Police Department and Police Officer Gary Switzer*, Index # 46870/96, Supreme Court of the State of New York, County of Kings.  Klein Aff., at ¶ 2; Blumenfeld Aff., at ¶ 6.

In the Personal Injury Action, the Debtor alleges that he was injured after being struck by a police car while he was walking with a parade, on or about September 4, 1995.  Klein Aff., at ¶ 3; Blumenfeld Aff., at ¶ 1.  The Debtor filed a Notice of Claim on the City on or about November 3, 1995. Klein Aff., at ¶ 4; Blumenfeld Aff., at ¶ 3.  On or about January 26, 1996, the Debtor testified before an Examiner for the New York City Comptroller's Office regarding his Notice of Claim (generally referred to as a "50-H Hearing").  At the 50-H Hearing, the Debtor was represented by counsel. Klein Aff., at ¶5.

The Personal Injury Action was commenced by the filing of a Summons and Verified Complaint on or about December 3, 1996. Klein Aff., at ¶ 6; Blumenfeld Aff., at ¶ 6.  The Personal Injury Action, thus, has been pending for more than fifteen years.   The City interposed an Answer on or about January 3, 1997.  Klein Aff., at ¶ 7.  On November 11, 2010, the Debtor filed a Note of Issue and Certificate of Readiness, placing the Personal Injury Action on the State Court trial calendar.  Klein Aff., at ¶ 8.

### B. The City's Discovery That Debtor Filed For Chapter 7 Relief in November 1996.

The City only first became aware in February 2012, that the Debtor had previously filed a Chapter 7 case. The City discovered that, after the Debtor filed his Notice of

Claim and testified at his 50-H Hearing, the Debtor filed a bankruptcy petition in this Court under Chapter 7 (the "Chapter 7 Petition"), on November 25, 1996.  Copies of the documents contained in the file of the Chapter 7 case,  which was obtained by the City from the federal archives in Missouri[1] are collectively attached to the Klein Affirmation as Exhibit "A".  For convenience, an additional copy of the Bankruptcy Court docket for the Debtor's Chapter 7 case is also annexed to the Klein Affirmation as Exhibit "B".  Klein Aff., at ¶ 9.

At the time of the filing of the Chapter 7 Petition, the Debtor was represented by bankruptcy counsel, Anthony Rahmanan, Esq.  See Klein Aff., at ¶ 10, and Exhibit "A".  The Debtor did not list his possible claim against the City of New York in his Chapter 7 Petition.  See Klein Aff., at ¶ 11, and Exhibit "A".  The Debtor also did not list his possible claim against the City of New York in his Schedules.  See Klein Aff., at ¶ 12, and Exhibit "A".  The Debtor did not list his possible claim against the City of New York in his Statement of Financial Affairs.  See Klein Aff., at ¶ 13, and Exhibit "A".  Each of the Petition, the Schedules and the Statement of Financial Affairs were submitted under penalty of perjury.  See Klein Aff., at ¶ 14, and Exhibit "A".

As noted above, ten days after filing the Chapter 7 Petition, on December 3, 1996, the Debtor commenced the Personal Injury Action by filing a summons and complaint in the State Court.  Klein Aff., at ¶ 15.

The Debtor's Schedule F lists a total of $8,047.16 owed to six unsecured creditors, five creditors holding "credit card debt", and one bank holding a "loan".  In addition,

---

[1] Since the case file was in the federal archives, the only information available to the City initially was a print-out of the electronic Bankruptcy Court docket, which was obtained on February 10, 2012.  On February 14, 2012, the City requested a copy of the plaintiff's entire bankruptcy file from the federal archives.  On Friday, February 17, 2012, the City received a certified copy of the Debtor's bankruptcy case file from the federal archives.  See Klein Aff., at ¶ 9, and Exhibit A.

Schedule D lists a secured debt to the Internal Revenue Service of $800. In addition, the Debtor listed assets of minimal value and claimed them all as exempt. See Klein Aff., at ¶ 16, and Exhibit "A"; Blumenfeld Aff., at ¶ 7.

According to the docket, a first meeting of creditors was held on January 7, 1997, the Debtor was examined, and the meeting was closed. See Klein Aff., at ¶ 17, and Exhibit "B". According to the Debtor's bankruptcy counsel's "Statement Pursuant to Local Rule 10(f)," dated November 11, 1996, counsel's law firm agreed to represent the Debtor at the first meeting of creditors. See Klein Aff., at ¶ 18, and Exhibit "A". Two days after the first meeting of creditors, on January 9, 1997, the Chapter 7 Trustee in this case, John S. Pereira, filed a "Trustee's Report of No Assets – Debtor(s) Examined". See Klein Aff., at ¶ 19, and Exhibits "A" and "B"; Blumenfeld Aff., at ¶ 8.

The Debtor received a discharge in bankruptcy on June 6, 1997. See Klein Aff., at ¶ 21, and Exhibit "A". The Chapter 7 case was closed and a Final Decree entered on June 18, 1997. See Klein Aff., at ¶ 22, and Exhibits "A" and "B;" Blumenfeld Aff., at ¶ 8.

At no time before the Chapter 7 Case was closed did the Debtor seek to amend his pleadings to add his claim against the City as an asset. See Klein Aff., at ¶ 23, and Exhibits "A" and "B". It should be noted also that at no time since 1997, did either the Debtor or his counsel ever inform the City that the Debtor had filed the aforementioned Chapter 7 Petition. Klein Aff., at ¶ 23.

Upon information and belief, after receiving his discharge, the Debtor engaged counsel and commenced a separate action entitled *Wildy Narcisse v. Seymour Halpern, M.D.,* Index No. 19887/02, Supreme Court of the State of New York, County of New York, in which he alleged that he had suffered injuries as a result of medical malpractice (the "Medical

Malpractice Action"). Klein Aff., at ¶ 24. Upon information and belief, the Debtor never sought to have a guardian ad litem appointed in the Medical Malpractice Action. Klein Aff., at ¶ 25.

## C. **The City's Motion to Dismiss the Personal Injury Action.**

The trial in the Personal Injury Action was scheduled to begin in late February 2012. When the City became aware of the existence of this Chapter 7 case for the first time in early February 2012, as noted above, the City took steps to obtain the records of the case from the federal archives. Klein Aff., at ¶ 26.

On February 23, 2012, the City moved by Order to Show Cause in the State Court to dismiss the Personal Injury Action on the ground that Wildy Narcisse lacks standing to maintain the suit based on well settled state law which recognizes that a debtor's failure to list a legal claim as an asset in his or her bankruptcy proceeding causes the claim to remain the property of the bankruptcy estate and precludes the Debtor from pursuing the claim on his or her own behalf. Klein Aff., at ¶ 27.

The Debtor cross-moved in the State Court for a stay, in order to have time to make this Motion to reopen the Chapter 7 case. The Debtor also cross-moved, for the first time, more than sixteen years after his asserted injury, for the appointment of a guardian *ad litem*. Klein Aff., at ¶ 28. The State Court adjourned the trial and the hearing on the City's motion to dismiss, to give the Debtor the time to make a motion to reopen the Chapter 7 case. Klein Aff., at ¶ 29. The Debtor thereafter filed this Motion to reopen the Chapter 7 case for the sole purpose of adding the Personal Injury Action as an asset – more than fourteen years after the bankruptcy was closed. Klein Aff., at ¶ 30.

**ARGUMENT**

I.    **THE DEBTOR HAS NOT MET THE STANDARD FOR
      REOPENING A CLOSED CASE UNDER SECTION 350(b)**

    A.    **The Standard For Reopening a Closed Chapter 7 Case.**

        Section 350(b) of the Bankruptcy Code states in pertinent part, "A case may be reopened in the court in which such case was closed to administer assets, to accord relief to the debtor, or for other cause." The permissive language of the statute means that decision to reopen the case is within the Bankruptcy Court's broad discretion. State Bank of India v. Chalasani (In re Chalasani), 92 F.3d 1300, 1307 (2d Cir. 1992); In re Lowery, 398 B.R. 512, 514 (Bankr. E.D.N.Y 2008) (Feller, B.J.); In re Meneses, 2010 Bankr. LEXIS 700, 7-8 (Bankr. E.D.N.Y. 2010) (Trust, B.J.).

        In considering such a motion, courts evaluate several factors, namely, the benefit to the debtor, the prejudice to the affected entity and the benefit to the creditors. See, In re Koch, 229 B.R. 78, 85-86 (Bankr. E.D.N.Y 1999) (Duberstein, B.J.). Furthermore, in addition to the three factors listed above, in cases involving a debtor's failure to reveal a pre-petition claim as an asset, the courts in this district also weigh whether the omission was made in good faith. In re Lowery, 398 B.R. at 516; In re Koch, 229 B.R. at 87; In re Meneses, 2010 Bankr. LEXIS 700, 8-9; In re Stein, 394 B.R. 13, 16 (Bankr. E.D.N.Y. 2008); In re Arana, 456 B.R. 161, 172 (Bankr. E.D.N.Y. 2011).

    B.    **The Debtor Cannot Pursue the Claim Against the City For His
      Own Benefit.**

        When a debtor files a bankruptcy petition, an estate to be administered by a trustee is created that encompasses "all legal or equitable interests of the debtor in property as of the commencement of the case," under Section 541(a) of the Bankruptcy Code. This includes any tort claims that have accrued at the time of the filing. See, e.g., Burton v. 215 East 77th

Assocs., 284 A.D.2d 122, 725 N.Y.S.2d 337 (1st Dept. 2001). Upon the filing of the Debtor's Chapter 7 Petition, the Personal Injury Action became property of his bankruptcy estate even though he did not list it on his schedules or statement of financial affairs. See In re Lowery, 398 B.R. at 513-514. Because the Personal Injury Action was not disclosed by Mr. Narcisse, it could not have been administered or abandoned by a trustee. Accordingly, the Personal Injury Action remains property of the estate even after the closing of Mr. Naricisse's bankruptcy case, under Section 554(c) and (d) of the Bankruptcy Code. In re Lowery, 398 B.R. at 514; see also Dynamics Corp. of America v. Marine Midland Bank, 69 N.Y.2d 191, 195-196, 513 N.Y.S.2d 91 (1987); Weitz v. Lewin, 251 A.D.2d 402, 402, 675 N.Y.S.2d 544 (2d Dept. 1998); Bromley v. Fleet Bank, 240 A.D.2d 611, 611, 659 N.Y.S.2d 83 (2d Dept. 1997).

Courts have long held that "a debtor's failure to list a legal claim as an asset in his or her bankruptcy proceeding causes the claim to remain the property of the bankruptcy estate and precludes the debtor from pursuing the claim on his or her own behalf." 123 Cutting Co., Inc., vs. Topcove Assocs., Inc., 2 A.D.3d 606, 607, 770 N.Y.S.2d 365 (2d Dept. 2003) (multiple citations omitted); see also, Moses v. Howard Univ. Hosp., 606 F.3d 789, 798 (D.C. Cir. 2010) ("It appears that every circuit that has addressed the issue has found that judicial estoppel is justified to bar a debtor from pursuing a cause of action in district court where that debtor deliberately fails to disclose the pending suit in a bankruptcy case.") (multiple citations omitted). Accordingly, Mr. Narcisse has had no right to prosecute the Personal Injury Action on his own behalf since November 1996, when he filed his Chapter 7 Petition. Nevertheless, for more than fourteen years, Mr. Narcisse has been pursuing the Personal Injury Action. Only when the City discovered the existence of the Chapter 7 Case, and moved to dismiss the Personal Injury Action because he lacks standing to pursue it, did he make this Motion to reopen the bankruptcy case.

See, In re Lowery, 398 B.R. At 515 ("In an attempt to remedy the dilemma posed by NYC's request in state court to dismiss the P.I. Action for lack of standing, Ms. Lowery moves to reopen her bankruptcy case to amend her filing to include the P.I. Action so that this estate asset could be administered by a trustee.")

C.    **The Debtor Cannot Show That His Failure to Disclose His Asserted Claim Against the City Was In Good Faith**

The circumstances in this case are remarkably similar to those in In re Lowery, 398 B.R. 512 (Bankr. E.D.N.Y 2008), decided by Judge Feller. In Lowery, the debtor alleged that she had been injured in an car accident with a police car. 398 B.R. at 513. Ms. Lowery commenced a personal injury action against the City, and subsequently filed a Chapter 7 petition in this Court. Ms. Lowery did not list the claim against the City on her petition or on her schedules. She swore in her Statement of Financial Affairs that she had no claim against any party. 398 B.R. at 513. She did not reveal the existence of her claim against the City at her Section 341 meeting of creditors. 398 B.R. at 514. On her schedules she listed assets of minimal value and claimed them all as exempt. After his investigation revealed no assets available for distribution to creditors, the Chapter 7 Trustee filed a Notice of No Distribution. Ms. Lowery did not seek to amend her schedules to reveal the claim as an asset. Ms. Lowery accordingly received a discharge, and her case was closed. Eight years later, on the eve of trial in her personal injury case against the City in State Court, the City discovered the existence of Ms. Lowery's Chapter 7 case and made a motion to dismiss the action. Only then, did Ms. Lowery make a motion to this Court to reopen her Chapter 7 case, and to add the claim against the City to her schedules. 398 B.R. at 514.

Under these circumstances, Judge Feller held that Ms. Lowery had not demonstrated good faith or cause to reopen her case. Judge Feller noted that there was a long

standing tenet of bankruptcy law that requires that a debtor seeking its benefits satisfy a

companion duty to schedule all his interests and property rights. 398 B.R. at 515. Thus, a debtor

seeking shelter under the bankruptcy law must disclose all assets and potential assets. See

Section 521(a)(1) of the Bankruptcy Code. Full and honest disclosure in a bankruptcy case is

crucial to the effective functioning of the bankruptcy system. "Because the bankruptcy court,

trustees, and creditors rely on the information disclosed by a debtor, the importance of full

disclosure cannot be overemphasized." 398 B.R. at 515. Judge Feller held that Ms. Lowery's

actions fell far short of fulfilling her obligations in this regard:

> Ms. Lowery had a duty to answer the questions presented in the schedules
> and financial affairs carefully, completely, and accurately. Indeed, the schedules
> and statement of financial affairs make it transparently plain that she was
> required to disclose the P.I. Action. Nonetheless, Ms. Lowery opted to
> affirmatively negate under oath the existence of the P.I. Action in her schedules
> and statement of financial affairs. The duty to disclose is a continuing one and
> does not end with the filing of the bankruptcy petition. Ms. Lowery compounded
> her breach of duty by failing to disclose the P.I. Action at the Section 341 meeting
> or at any other time prior to close of her bankruptcy case. See Fed. R. Bankr. R.
> 1009(a) (stating that the schedules and statement of financial affairs "may be
> amended as a matter of course at any time before the case is closed"). Moreover,
> Ms. Lowery's seeking to reopen the bankruptcy case was not until October 2008,
> more than 8 years after its closing, when it became apparent that the P.I. Action
> was imperiled by the failure to list this asset in her schedules.

In re Lowery, 398 B.R. at 515.

Judge Feller further noted that as the time between closing of a bankruptcy case

and its reopening increases, so must the cause for reopening increase in weight. 398 B.R. at 515-

516, citing Citizens Bank & Trust Co. v. Case (In re Case), 937 F.2d 1014, 1018 (5th Cir. 1999).

The only reason offered by Ms. Lowery for her failure to disclose the pending personal injury

action against the City for more than eight years was that the omission was "the product of

inadvertence or an innocent mistake." 398 B.R. at 516. However, he held, these asserted

reasons were not acceptable under the circumstances:

> The absence of good faith in nondisclosure may be inferred from the record. As a general proposition, a debtor's failure to satisfy a statutory disclosure duty may be deemed inadvertent or the product of an innocent mistake when the debtor either i) lacks knowledge of the undisclosed matter, or ii) has no motive for its concealment. *See Superior Crewboats, Inc. v. Primary P&I Underwriters (In re Superior Crewboats, Inc.)*, 374 F.3d 330, 335 (5th Cir. 2004); *Burnes*, 291 F.3d at 1287; *Browning Manufacturing v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 210 (5th Cir. 1999); *In re Walker*, 323 B.R. 188, 195 (Bankr. S.D. Tex. 2005). Any assertion that Ms. Lowery lacked knowledge of the P.I. Action is just not credible, particularly in light of the seriousness of the injuries allegedly incurred in the automobile accident. Furthermore, Ms. Lowery had the requisite motivation to conceal the P.I. Action as she would thereby be able to preserve for her own benefit, to the exclusion of her creditors, any recovery she might obtain upon successful prosecution or settlement of the claim.

In re Lowery, 398 B.R. at 516 (emphasis supplied).

The facts in this case are strikingly similar to those in the Lowery case. In this case, Mr. Narcisse alleges that he was injured after being struck by a police car. Blumenfeld Aff., at ¶ 1. Mr. Narcisse filed a Notice of Claim against the City, Blumenfeld Aff., at ¶ 3, and testified at a 50 H hearing. Klein Aff., at ¶5. Mr. Narcisse subsequently filed a Chapter 7 Petition in this Court. Ten days after filing the Petition, Mr. Narcissse formally commenced the Personal Injury Action against the City by filing a Summons and Complaint in the State Court. Klein Aff., at ¶6; Blumenfeld Aff., at ¶ 6. Mr. Narcisse did not list the claim against the City on his Petition or in his schedules. Klein Aff., at ¶¶ 11-12, and Exhibit "A" Mr. Narcisse swore in his Statement of Financial Affairs that he had no claim against any party. Klein Aff., at ¶ 12, and Exhibit "A" He did not reveal the existence of the claim against the City at his Section 341 meeting of creditors (even though the Personal Injury Action had been formally commenced by that date). Klein Aff., at ¶¶ 17-19. He permitted the Chapter 7 Trustee to file a Notice of No Distribution, without correcting his previous omissions. Klein Aff., at ¶¶ 19-20; Blumenfeld Aff., at ¶ 8. Mr. Narcisse listed assets of minimal value and claimed them all as exempt. Klein Aff., at ¶16, and Exhibit "A". Mr. Narcisse did not seek to amend his schedules to reveal the

claim as an asset. Klein Aff., at ¶ 23, and Exhibits "A" and "B".   Mr. Narcisse accordingly received a discharge, and his case was closed. Klein Aff., at ¶23. Fourteen years later, on the eve of trial in the Personal Injury Action against the City in State Court, the City discovered the existence of Mr. Narcisse's Chapter 7 case and made a motion to dismiss the action.  Klein Aff., at ¶¶26-27.  Only then, did Mr. Narcisse make a motion to this Court to reopen his Chapter 7 case, and to add the claim against the City to his schedules.  Klein Aff., at ¶¶28-20.

As in <u>Lowery</u>, the Debtor in this case asserts that "his failure to include the personal injury action was inadvertent or omitted in good faith." Debtor's Memo. Of Law, at page 5.   However, to the contrary, as in <u>Lowery</u> , the absence of good faith on the part of Mr. Narcisse can be "inferred from the record."  <u>In re Lowery</u>, 398 B.R. at 516.  Here, Mr. Narcisse, like Ms. Lowery, did not lack knowledge of the undisclosed matter.  Moreover, he had a motive for concealment, since he would be able to pursue his claim against the City for his own benefit (as he has done for the last fourteen years). See <u>In re Lowery</u>, 398 B.R. at 516  ("Ms. Lowery had the requisite motivation to conceal the P.I. Action as she would thereby be able to preserve for her own benefit, to the exclusion of her creditors, any recovery she might obtain upon successful prosecution or settlement of the claim.") See also, <u>In re Meneses,</u> 2010 Bankr. LEXIS 700 (Bankr. E.D.N.Y. Mar. 3, 2010) (Because Debtor received his discharge, he would have benefited by being able to keep the entire recovery from the Personal Injury Action; motion to reopen case denied); <u>Steel of W. Va., Inc. v. McMellon (In re McMellon)</u>, 448 B.R. 887 (S.D. W. Va. 2011): ("Mr. McMellon similarly had a motive to conceal his claim: failing to disclose it would not harm him unless his adversary uncovered his prior bankruptcy petition, and challenged his incomplete disclosure in the State proceeding.")

The only additional arguments advanced by Mr. Narcisse are that, at the time of the filing of the Chapter 7 Petition, his claim against the City was "unasserted" and that he "was suffering from brain trauma." Debtor's Memo. Of Law, at page 5. With regard to the first argument, however, Mr. Narcisse's claim was not "unasserted" when he filed his Chapter 7 Petition; in fact, he had already filed a Notice of Claim, and he had already testified at a 50-H Hearing. Klein Aff., at ¶¶4-5. See In re Meneses, 2010 Bankr. LEXIS 700, 8-9 (failure to schedule claim was not inadvertent; although Debtor did not commence personal injury action until after he filed the petition, his cause of action accrued prior to the petition, when he had the accident; Debtor should have been aware of his cause of action when he completed and signed his Schedules indicating he did not own any such claims, particularly given the pain and discomfort he alleges he suffered).

Moreover, by the time Mr. Narcisee testified at his Section 341 meeting of creditors, the Personal Injury Action had already been formally commenced by the filing of a summons and complaint. Klein Aff., at ¶¶ 6, 17. See In re Meneses, 2010 Bankr. LEXIS 700, 8-9 ("Debtor retained Litigation Counsel in the Personal Injury Action prior to the 341 Meeting, so he must have been aware of his claim.") Based on Mr. Narcisse's examination, in which he apparently failed to disclose the claim, the Chapter 7 Trustee filed a Trustee's Report of No Assets two days later. Klein Aff., at ¶¶ 19-20. Thus, even assuming arguendo that the claim was "unasserted" at the time of the Petition, it was fully asserted thereafter, and Mr. Narcisse never revealed it, nor sought to amend his schedules or statement of affairs during the Chapter 7 Case to correct his erroneous omissions. In re Lowery, 398 B.R. at 515 ("The duty to disclose is a continuing one and does not end with the filing of the bankruptcy petition.") See also, Bankruptcy Rule 1009(a), which provides that "[a] voluntary petition, list, schedule, or statement

may be amended by the debtor as a matter of course at any time before the case is closed." See also, In re Raggie, 389 B.R. 309 (Bankr. E.D.N.Y 2008) (right to amend bankruptcy schedules as a matter of course never expired where the case was never closed; liberal amendments to schedules are favored.) In such circumstances, the failure to amend pleadings to correct the omission is indicative of a lack of good faith.  In re Lowery, 398 B.R. at 515; In re Meneses, 2010 Bankr. LEXIS 700, 9.

      As to the second argument, the record here is by no means clear as to the true effects of Mr. Narcisse's asserted injuries.  In fact, it appears uncontested that Mr. Narcisse was able to take certain actions to protect and promote his own interests: He apparently filed a timely Notice of Claim. Blumenfeld Aff., at ¶ 3.  He was able to retain counsel and testify at a 50-H Hearing. Klein Aff., at ¶ 5. He was able to retain counsel and file a Chapter 7 Petition. Blumenfeld Aff., at ¶ 5.  He was able to retain counsel and file his Personal Injury Action against the City.  Blumenfeld Aff., at ¶ 6.  He was able to prosecute his Chapter 7 Case to its conclusion and obtain his discharge.  Thereafter, he apparently was able to retain counsel and commence and prosecute a Medical Malpractice Action against a doctor who treated him. See Klein Aff., at ¶¶ 24-25.  During the more than fifteen years that the Personal Injury Action was pending, neither Mr. Narcisse nor any of his counsel apparently thought it necessary or appropriate to obtain a guardian ad litem to protect his interests, until the City made its motion to dismiss the Personal Injury Action. Klein Aff., at ¶¶25, 28.  In view of the record here, Mr. Narcisse's claimed injuries at the time of the Chapter 7 Petition filing, however unfortunate, have not been shown to be a sufficient grounds to excuse or exempt him from the continuing obligation to make full disclosure in order to receive the benefits of a discharge from his debts.  Compare, In re Burton, 2011 Bankr. LEXIS 4512, 16-19 (Bankr. D.N.C. 2011).

Accordingly, the analysis and rationale applied by Judge Feller to the record in the <u>Lowery</u> case regarding the Debtor's inability to show good faith, is equally valid and compelling with respect to the record in this case. The result should also be the same, and the Debtor's Motion should be denied.

### D.    There Will Be No Benefit To Creditors If This Case Is Reopened Fourteen Years After It Was Closed

In this case, the Debtor asserts that "[i]f the Personal Injury Action prevails, creditors stand to receive a full recovery of their claims." Debtor's Memo. Of Law, at page 6. However, this assertion is not accurate.  In fact, there will almost certainly be no benefit to creditors here if the case is reopened.  In the <u>Lowery</u> case, the debtor made a similar argument. Judge Feller, however, rejected it, holding: "In the context of this case, the argument is a specious one."  <u>In re Lowery,</u> 398 B.R. at 516.   Judge Feller noted that the claims against the Lowery estate were relatively modest (4 creditors with aggregate claims of $ 13,249.90), and were relatively old.  In those circumstance, he held, it was unlikely that any creditor would be able to recover anything:

> In order to receive a distribution, these creditors must file proofs of claim. See Fed. R. Bankr. P. 3002(a). Taking into account the passage of 10-14 years and the mandated form and content of proofs of claim, including required documentation, it is likely that proofs of claim will not be filed by at least some of these creditors within a bar date to be fixed by the court, if this former no asset case was to be reopened. See  Fed. R. Bankr. P. 2002(e), 3001(a), 3002(c)(5) and Official Form 10. <u>As a practical matter, no real benefit from reopening the case will be enjoyed by anyone other than Ms. Lowery, the former Debtor. If debtors could omit personal injury actions or other lawsuits, and then simply move to reopen once caught, nondisclosure would be altogether too attractive. The public interest in the systemic integrity of the bankruptcy process dictates that a bankruptcy court should withhold relief that encourages the concealment of assets by debtors.</u> As one federal appeals court stressed: "Allowing [the debtor] to back-up, re-open the bankruptcy case, and amend his bankruptcy filings, only after his omission has been challenged by an adversary, suggests that a debtor should consider disclosing personal assets only if he is caught concealing them." <u>Burnes,</u> 291 F.3d at 1288.

In re Lowery, 398 B.R. at 516 (emphasis supplied).

      Similarly, in this case, the claims against Mr. Narcisse are relatively modest (7 creditors with an aggregate of $8,849), and they are relatively old (all incurred prior to November 1996). Klein Aff., at ¶ 16, and Exhibit "A"; Blumenfeld Aff., at ¶ 7. Here, more than fifteen years have passed; the listed creditors -- all institutional creditors -- presumably long ago have written off the debts. Thus, it is extremely unlikely that the creditors here will be able – or motivated – to file proofs of claim. Accordingly, only the Debtor stands to benefit from the reopening of this case – a result that should not be favored. See also, In re Koch, 229 BR. at 88; In re Schick, 2008 Bankr. Lexis 935 (Bankr. S.D.N.Y. Mar. 19, 2008) (failure to schedule claim prejudiced creditors; reappointed trustee would lack financial means to pursue claim, so that reopening case would only reward debtor for earlier non-disclosure; motion denied).

      For this reason, the Debtor's reliance on In re Arana, 456 B.R. 161 (Bankr. E.D.N.Y. 2011) (Stong, B.J.), is unavailing. See Debtor's Memo. Of Law, at pages 4-6. In Arana, Judge Stong held that "The prospect of a benefit to creditors is the most important consideration in determining whether to reopen a bankruptcy case to add an undisclosed asset." 456 B.R. at 175. In that case, the Aranas listed thirty unsecured creditors with claims ranging from $25.60 to $37,693.50, for a total of $112,862.83 in unsecured claims. Id. The claims were not old, and the debtors moved to reopen within five years of the closing of the case. Under those circumstances, Judge Stong held, the potential benefit to creditors weighed heavily in favor of reopening the case. Id. However, Judge Stong recognized that if there were no likely benefit to creditors, the case should not be reopened:

      But if creditors are not likely to benefit from the addition of an asset, the balance tips in the other direction, and relief may not be warranted. As one court observed, "[w]here the chance of any substantial recovery for creditors appears too remote to make the effort worth the risk, a trial court does not abuse its

> discretion in denying a motion to reopen." _Herzig_, 96 B.R. at 266 (internal
> quotation marks omitted). _See Koch_, 229 B.R. at 86-88 (vacating its order
> reopening case where due to the debtor's bad faith conduct, creditors would not
> benefit from the addition of an undisclosed lawsuit).

In re Arana, 456 B.R. at 175 (emphasis supplied).    As discussed above, in the Narcisse case, as

in the Lowery case, the creditors are not likely to benefit from the reopening of the case.

Accordingly, the Arana case is readily distinguishable from this case,[2] and the Debtor's reliance

on it is misplaced.

        Thus, the reasoning set forth by Judge Feller in In re Lowery should be equally

compelling given the facts of this case.  The Bankruptcy Courts should not countenance efforts

aimed at circumventing the duty of debtors to reveal truthfully the extent of any and all claims

and assets they may possess.  In re Lowery, 398 B.R. at 516 ("The public interest in the systemic

integrity of the bankruptcy process dictates that a bankruptcy court should withhold relief that

encourages the concealment of assets by debtors.")  For example, in Steel of W. Va., Inc. v.

McMellon (In re McMellon), 448 B.R. 887 (S.D. W. Va. 2011), the District Court found the

rationale set forth in the Lowery case to be persuasive, and held that the debtor's motion to

reopen for the purposes of adding an omitted claim should not be granted where the motion was

filed only as a response to his adversary's attempt to dismiss his underlying claim, and where

there was substantial evidence that his failure to disclose that claim was not simply inadvertent.

Id. The District Court noted that the debtor in the case before had both knowledge of the

undisclosed claim and a motive to conceal it, and therefore rejected the debtor's assertion that his

omission had been merely inadvertent.  The District Court held that the Bankruptcy Court had

---

[2] In addition, the Arana case is distinguishable from this case in that Judge Stong found that the Aranas' failure to disclose their claim was not the product of bad faith, because, among other things: they represented themselves throughout their bankruptcy case; they, like thousands of other debtors at the time, rushed to file before BAPCPA's effective date; their command of English was not strong; they filed the Chapter 7 case with the assistance of a bankruptcy petition preparer, not a lawyer; and the defendant in the P.I. Action waited almost four years after learning of the bankruptcy to make the motion to dismiss. 456 BR at 177. None of these factors are present in Mr. Narcisse's case; rather, as noted above, the circumstances in his case closely parallel those in the Lowery case.

abused its discretion when it reopened the debtor's chapter 7 case, stating, "Debtors could, after all, rationally choose to conceal their potential claims during bankruptcy, and to subsequently or concurrently pursue them unless the pursuit is challenged. This is a potentially profitable risk for the debtor, but not one that should be met with judicial approval," citing, Moses v. Howard Univ. Hosp., 606 F.3d 789, 800 (D.C. Cir. 2010) (discussing the policy reasons for finding similarly). Thus, the District Court held, "While the interests of creditors are obviously vital to the reopening inquiry, this Court believes that the integrity of the bankruptcy process is a matter that weighs more heavily on these facts." Id. This Court should hold similarly in this case.

## CONCLUSION

As discussed above, the Debtor has not shown that he is entitled to the relief sought in the Motion. Accordingly, the City respectfully requests that the Court enter an order denying the Motion in its entirety, and granting to the City such other and further relief as the Court determines to be just.

Dated: New York, New York
       April 16, 2012

                        MICHAEL A. CARDOZO
                        Corporation Counsel of the City of New York
                        Attorney for the City of New York

                        By:    /s/ Zachary B. Kass_____
                               Zachary B. Kass (ZK-1944)
                               Assistant Corporation Counsel
                               100 Church Street
                               New York, New York 10007
                               Tel.  (212) 788-1186
                               Fax   (212) 788-0937
                               zkass@law.nyc.gov