Law Office of Rachel Blumenfeld  
26 Court Street, Suite 2400  
Brooklyn, New York 11242  
(718) 858-9600  
Rachel Blumenfeld, Esq. (RB#1458)  
*Attorney for Debtor*

Hearing Date: April 25, 2012  
12:00 p.m.

UNITED STATES BANKRUPTCY COURT  
EASTERN DISTRICT OF NEW YORK  
-----------------------------------------------------------X  
In re:

WILDLY NARCISSE,

                      Debtor.  
-----------------------------------------------------------X

Chapter 7  
Case No:

### DEBTOR'S REPLY TO THE CITY OF NEW YORK'S OBJECTION TO DEBTOR'S MOTION TO REOPEN HIS CHAPTER 7 CASE

The debtor, **WILDLY NARCISSE**, (the "Debtor") by and through his undersigned counsel, hereby submits his Reply to the City of New York's Objection (the "Objection") to the Debtor's Motion to Reopen his Chapter 7 Case.

### PRELIMINARY STATEMENT

This Reply to the objection filed by counsel for the City of New York ("the City") results from the Debtor's motion for an Order (i) granting debtor leave to reopen the within bankruptcy case; and (ii) granting the Debtor leave to amend his Chapter 7 bankruptcy petition for the purpose of reflecting a pending personal injury action within the debtors' applicable schedule of assets as well as the Debtor's Statement of Financial Affairs (with said personal injury action entitled "*Wildy Narcisse v. The City of New York Police Department and Police Officer Gary Switzer*" currently venued in the Supreme Court, Kings County pursuant to assigned Index Number 46870/96) and for such other and further relief as this Honorable Court deems just and proper.

1

The City, the Defendant against whom the Debtor has made his claim for personal injury, filed an objection to the Motion to Reopen. The City argues that (a) the case should not be reopened because the Debtor is not going forward in good faith; and (b) if this Court does reopen the Bankruptcy case, there will be no benefit to creditors. The City maintains, in essence, that the Debtor forfeited his claim when he did not list it on his original schedule of assets. The City, however, has cited no legal authority pertinent to the facts of the instant case to support its claim. The Debtor's Motion to Reopen should be granted and the City's objection overruled as (A) the City lacks standing to object; (B) the Debtor has acted in good faith; (C) there is a benefit to the debtor's creditors; and (D) this motion is merely an administrative motion to determine whether the claim against the City is to be considered an asset of the estate for the benefit of creditors, not whether the claim ultimately has merit.

## STATEMENT OF FACTS

For a detailed recitation of the facts of this case, the Debtor respectfully refer this Court to its Affirmation in Support of Debtor's Motion to Reopen the Debtor's Chapter 7 Bankruptcy Case which the Debtor incorporate by reference as though fully set forth herein. *See* ECF docket numbers 9 and 10.

The facts are also more fully set forth in the Affirmation of Gregory J. Cannata In Support of Debtor's Motion to Reopen Chapter 7 Bankruptcy Case dated April 20, 2012 (the "Cannata Aff."), and submitted herewith and attached hereto as Exhibit "A".

A. **THE CITY LACKS STANDING TO OBJECT TO THE DEBTOR'S MOTION TO REOPEN TO AMEND THE BANKRUPTCY SCHEDULES**

As a threshold issue, the Court must determine whether the City even has standing in this proceeding, entitling it to be heard. The fact that the City is a defendant in the state court action does not make it a party in interest with respect to the bankruptcy case. The City is not a creditor and it lacks any other relation to the bankruptcy estate. Case law holds that a state court action defendant lacks standing to object to a motion to reopen. See In re Sweeney, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002); In re Ayoub, 72 B.R. 808, 812 (Bankr. M.D. Fla. 1987).

The court in In re Sweeney stated the rule succinctly:

> However, and unfortunately for the State Court Action Defendants, that they are named as parties in the State Court Action does not thereby also make them parties-in-interest with respect to the instant bankruptcy case, they thus are not parties-in-interest with respect to the same, which means that they lack standing to participate in matters that deal solely with the administration of such as, inter alia, the Trustee's motion to reopen and application to employ.

In re Sweeney, 275 B.R. 730, 733 (Bankrtcy. W.D. Pa. 2002).

In this matter the Motion to Reopen deals with the administration of the estate and the City, as merely the Defendant in the state court action, lacks standing to participate in matters dealing with the administration of the estate.

B. **THE CLAIM AGAINST THE CITY IS AN ASSET OF THE ESTATE THAT NEEDS TO BE PROPERTY ADMINISTERED FOR THE BENEFIT OF DEBTOR'S CREDITORS**

Moreover, even if the City had standing to object to the Motion to Reopen, its objection to the motion is misplaced. Where a court is called upon to re-open a case, there are three initial factors to consider: (i) the benefit to the debtor; (ii) the prejudice to

3

the affected entity; and (iii) the benefit to the creditors. See In re Koch, 229 B.R. 78 (Bankr. E.D.N.Y. 1999).[1] Finally, a court will also consider whether the debtor has acted in good faith. *Id.* At 87. A debtor's failure to act in good faith "is an important element that the court looks to in authorizing the reopening of a bankruptcy case." *Id.* Rule 5010 of the Rules of Bankruptcy Procedure provides that a case may be reopened on motion of the debtor or other party in interest pursuant to section 350(b) of the Bankruptcy Code. In re White, 104 B.R. 951 (1989 S.D. Ind.). Section 350(b) empowers a bankruptcy court to reopen a case to "administer assets, to accord relief to the debtor or for other cause." The Court has broad discretion when it comes to reopening cases. See In re Arboleda, 224 B.R. 640 (N.D. Ill. 1998).

The Ninth Circuit BAP has stated that "it is an abuse of discretion to deny a motion to reopen where 'assets of such probability, administrability, and substance' appear to exist 'as to make it unreasonable under all the circumstances for the court not to deal with them.'" In re Lopez, 283 B.R. at 27 (quoting In re Herzig, 96 B.R. 264, 266 (9th Cir. BAP 1989)). See also In re Mullendore, 741 F.2d 306, 308 (10th Cir. 1984)(citing to In re Joslyn's Estate, 171 F.2d 159, 164 (7th Cir. 1948)).

As shown below, considerations of these factors show that the Debtor's Motion to Reopen the Bankruptcy Case should be granted.

1. **Benefit to the Debtor**

    The Debtor of course believes that re-opening the case will benefit him. It

---

[1] The City relies on the case In re Koch in its opposition. In the Koch case, the debtor filed a chapter 7 petition and almost immediately converted it to a chapter 11 so he could control the litigation. Koch was decided on peculiar facts of that case and has no application to this chapter 7 case where the debtor is seeking to reopen and prosecute a lawsuit which during the pendency of the bankruptcy was never disclosed by the debtor.

4

is only when the debtor's misconduct is the root cause of events that weigh in favor of denying a motion to re-open, as opposing to granting it. See In re Koch, 229 B.R. at 86. This is the most significant factor to be considered under these circumstances. The Debtor here suffered a traumatic brain injury and was represented by questionable counsel at the time of his bankruptcy filing. (See New York State Unified Court Systems attorney page for Anthony Rahmanan attached hereto as Exhibit "B" under 'Registration Status' that the debtor's bankruptcy attorney "Resigned from bar – disciplinary reason").

2. **Prejudice to Petitioners**

There is no obvious prejudice to the City here. A re-opening of the bankruptcy case. Clearly, and understandably, The City's reason for objecting to the reopening of the estate is strategic and defensive. The objection here is a litigation tactic meant to stall and impede prosecution of the personal injury claim in the state court action. The City's objective is to reduce the estate's recovery in connection with the state court action. The City's fundamental goal is to bar the Debtor's state court claim. However, the creditors of this estate should not be forced to sponsor a windfall for an alleged malefactor. The disclosure requirements of bankruptcy are meant to protect the creditors who would be prejudiced by a debtor's failure to disclose assets. They are not meant to allow a state court defendant to avoid liability for wrongdoing. The City's interest in defending itself in the state court action is actually contrary to the interests of rightful creditors of the Debtor who have a proper interest in maximizing any recovery from the City.

3. **Benefit to Creditors**

The City argues that there will be no benefit to creditors since there may be no recovery. Even if that were true, the creditors of the Debtor's estate have the right to

5

await the results and possible settlement of his lawsuit. The Court must consider the interests of the Debtor's creditors. Denying the Motion to Reopen would penalize the Debtor's creditors as it would foreclose the prosecution of claims against the City. Those claims, if successful, would result in a 100% distribution to the Debtor's creditors. In the alternative, if the estate is not reopened, the only winner in the situation will be the City because it will be relieved of the necessity of justifying its behavior.

As stated in In re Dewberry, "[t]his Court is unwilling to punish Debtor's creditors based merely on the fact of Debtor's nondisclosure." 266 B.R. at 919. See also In re Arana, 456 B.R. at 173 ("'Some courts have looked to whether the debtor's nondisclosure was intentional. . . . However, the better view is that creditors in the bankruptcy case should not be deprived of their ability to be paid proceeds of the asset regardless of the debtor's intent.'" (quoting 3 Collier on Bankruptcy ¶ 350.03[1] at 350-7)).

### 4. Debtor's Good Faith

In evaluating a motion to re-open a bankruptcy, courts will also look to the conduct of the debtor. See In re Koch, 229 B.R. at 87; see also In the Matter of Tarrer, 273 B.R. 724, 734 (Bankr. N.D. Ga. 2001) ("the Court acknowledges that courts have considered the detor's good faith, or lack thereof, when deciding whether to allow a debtor to reopen a case for the purpose of adding a cause of action …") Considerations of this last "important element" make it clear that the Debtor's application should be granted.

While the City argues otherwise, the Debtor's failure to disclose the existence of the lawsuit in connection with his bankruptcy case was an omission in good faith. See Cannata Aff. The debtor was represented by questionable bankruptcy counsel, Anthony

6

Rahmanan, an attorney that has surrendered his license to practice law in the face of disbarment. The Debtor has also suffered for 14 years from a brain injury caused by the City. The Debtor did not have any motivation to conceal his claim from his creditors.

The City relies heavily upon In re Lowery, 398 B.R. 512, 514 (Bankr. E.D.N.Y. 2008) stating that "[t]he circumstances in this case are remarkably similar to those in In re Lowery" See the City's Opposition at p. 9 and page 11 "The facts in this case are strikingly similar to those in the Lowery case. Yet, the decision in that case does not indicate that Ms. Lowery suffered from severe brain injuries due to her accident. Nor does that decision indicate that Ms. Lowery was represented by questionable counsel.

It has long been established that when a debtor fails to schedule an asset, it is not abandoned because the trustee did not know of the existence of the asset and so intent to abandon cannot be inferred. Therefore, title to the asset did not revest in the debtor even after discharge. See First National Bank v. Lassiter, 196 U.S. 115, 25 S. Ct. 206, 49 L.Ed. 408 (1905). In fact, property of the debtor remains dormant in the estate in *custodial egis*, in the bankruptcy court, until the court again appoints a trustee to represent the creditors. Stein v. United Artists Corp., 691 F.2d 885, 893 (9th Cir. 1982). Debtor's state court action remains property of the bankruptcy estate because it was not expressly abandoned by the trustee prior to the closing of the case. Thus, reopening pursuant to 350(b) is proper so that the unabandoned asset can be administered. The fact that a trustee may be able to realize assets for the estate by investigating unabanded claims is reason to reopen a bankruptcy case. See In re Winebrenner, 170 B.R. 878, 882 (Barnk. E.D. Va. 1994).

It is within the sound discretion of the Court to reopen this case. The Debtor's state court action against the City is an asset of the estate. The asset has not been abandoned. The case should be reopened so that the schedule of assets can be amended and a trustee can be appointed to administer the asset for the benefit of valid creditors of the Debtor.

This motion is simply to reopen the case so as to allow proper administration of the estate, not to ultimately prove the City's wrongdoing or determine the amount of recovery. In fact, the only issue for this Honorable Court to determine is whether Plaintiff's claim against the City is to be considered an asset of the estate that needs to be administered. If so, the case needs to be reopened. This Honorable Court is not charged with responsibility to determine the merits or potential value of the state court action. Those are issues to be determined by the state court.

## CONCLUSION

Debtor's Motion to Reopen to allow him to amend Schedules B and C and The Statement of Financial Affairs should be granted and the City's objection should be overruled. First and foremost, the City lacks standing to raise their objection in this matter. It has no other relation to this bankruptcy matter other than being a state court defendant. Second, this Motion to Reopen is for administration purposes only. It is not to determine the merits or value of the underlying state court claim. The issue here is whether the claim is an asset of the estate. If it is an asset, the Motion to Reopen should be granted so as to allow for the proper administration of the estate and for proper distribution to creditors if the debtor is successful in his state court matter. If this

Honorable Court sustains the City's objection to the reopening of the case to administer the asset, the City would enjoy a tremendous windfall, while in turn the Debtor and his creditors would be severely prejudiced.

Ultimately, the claim against the City should be considered an asset of the estate and it should be administered pursuant to the Code. As such, the Debtor's Motion to Reopen should be granted.

Dated:  Brooklyn, New York
       April 23, 2012

                                      Respectfully submitted,
                                  Law Offices of Rachel Blumenfeld
                                         Attorney for Debtor

                                  By:  /s/ Rachel Blumenfeld
                                         Rachel S. Blumenfeld, Esq.
                                         26 Court Street, Suite 2400
                                         Brooklyn, New York  11242
                                                    Tel: (718) 858-9600
                                                    Fax: (718) 858-9601

EXHIBIT "A"

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

Hearing Date: April 25, 2012
Hearing Time: 12:00 pm

In re:

WILDY NARCISSE,

                Debtor.

Case No.: 96-21345
Chapter 7

### Affirmation of Gregory J. Cannata In Support of Debtor's Motion to Reopen Chapter 7 Bankruptcy Case

**GREGORY J. CANNATA**, hereby declares under penalty of perjury that the following is true and correct:

1. I am the attorney representing the debtor, Wildy Narcisse, in his personal injury action against the City of New York and Police Office Gary Switzer, and I submit this Affirmation to correct some of the misstatements made by Jonathan D. Klein in opposition to the present motion.

2. As the Court is aware, debtor Wildy Narcisse suffered a traumatic brain injury on September 4, 1995 when he was struck by a police car while marching in a parade. Prior to the accident, debtor Wildy Naricsse supported himself and his family working full time for a health care agency. Shortly before the accident, Mr. Narcisse was selected to receive advanced rehabilitation training by his employer. He completed the course and was working in this new position.

3. Mr. Narcisse's brain injury was treated and evaluated by numerous physicians following this accident. Each of these physicians, including physicians hired by the City of New

York itself and the Social Security Administration, found that Mr. Narcisse suffered from a traumatic brain injury. The diagnoses include: diffuse cerebral dysfunction, dementia, impaired cognitive skills, vegetative depression, impaired sequential thought, and suicidal ideations which necessitated confinement in a psychiatric hospital in January 1998.

4.  At and around the time the debtor filed his Bankruptcy Petition, he was taking the following medications for his brain injury and its sequeli: Meprobomate (anxiety), Esgic (headaches), Butobital with caffeine (headaches), Prozac (depression), Wellbutrin (depression), Trazdone (depression), Zyprexa (psychotic conditions).

5.  Mr. Narcisse came to this country from Haiti in the 1980s. His first language is French Creole, not English. He learned English upon coming to the United States.

6.  Because debtor Wildy Narcisse could no longer work and could not pay his bills, he sought counsel from an attorney. Unfortunately he hired Anthony Rahmanan, an attorney who has since surrendered his license to practice law in the face of disbarment. Mr. Narcisse explained his economic situation due to the car accident to Mr. Rahmanan, who prepared the Bankruptcy Petition. Mr. Narcisse was told to sign the Petition, which he did.

7.  The civil case involving the motor vehicle accident was handled by another attorney. A review of that attorney's file does not reveal any reference to Mr. Narcisse's Bankruptcy Petition. Your affirmant did not learn of the Bankruptcy until it was brought to my attention by the City of New York in February 2012.

8.  For the City of New York to suggest that debtor Wildy Narcisse's omission of the car accident from his Petition was a calculated scheme to avoid repaying $8,000 is absurd. Due to his brain injury, Mr. Narcisse did not have the mental capacity to even care for his basic personal needs. He certainly did not have the capacity to defraud creditors. He was taking

numerous psychogenic medications to address his host of mental disorders. In light of his mental condition, his limited education, his lack of familiarity with English, his unsophistication, it is clear that Mr. Narcisse followed bad advice from a questionable attorney. He was not trying to defraud anyone.

9. Finally, the City is trying to escape liability by using the very injury that it caused against Mr. Narcisse. The City's liability in this case is several millions of dollars. The Supreme Court judge who conferenced the case tried to settle it for $750,000 at a settlement conference. The City should not escape responsibility for destroying a human being's life because of nothing more than an innocent error.

**WHEREFORE,** your affirmant respectfully requests that the Court grant the Debtor's Petition to Reopen the Chapter 7 Bankruptcy case.

Dated: New York, New York
       April 20, 2012

*/s/ Gregory J. Cannata*
Gregory J. Cannata, Esq.

EXHIBIT "B"




# New York State Unified Court System

**Welcome**

**Attorney Search**

**Resources**

**Attorney Registration**

**E-Courts**

**Contact Us**

## Attorney Detail
as of 03/30/2012

**Registration Number:** 2158194

**ANTHONY RAHMANAN**
United States

**Year Admitted in NY:** 1988

**Appellate Division Department of Admission:** 2

**Law School:** PACE UNIVERSITY

**Registration Status:** Resigned from bar - disciplinary reason

**Next Registration:**

COURTS
LITIGANTS
ATTORNEYS
JURORS
JUDGES
CAREERS
SEARCH

The Detail Report above contains information that has been provided by the attorney listed, with the exception of REGISTRATION STATUS, which is generated from the OCA database. Every effort is made to insure the information in the database is accurate and up-to-date.

The good standing of an attorney and/or any information regarding disciplinary actions must be confirmed with the appropriate Appellate Division Department. Information on how to contact the **Appellate Divisions** of the Supreme Court in New York is available at www.nycourts.gov/courts.

If the name of the attorney you are searching for does not appear, please try again with a different spelling. In addition, please be advised that attorneys listed in this database are listed by the name that corresponds to their name in the Appellate Division Admissions file. There are attorneys who currently use a name that differs from the name under which they were admitted. If you need additional information, please contact the NYS Office of Court Administration, Attorney Registration Unit at 212-428-2800.

www.NYCOURTS.gov