UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re

WILDY NARCISSE,                                    Chapter 7
                                                   Case No. 96-21345 (NHL)


              Debtor.

----------------------------------------------------------------x


**MEMORANDUM DECISION GRANTING
DEBTOR'S MOTION TO REOPEN CHAPTER 7 CASE**


*Appearances*:
Rachel Blumenfeld, Esq.                   Michael A Cardozo
26 Court Street                           Corporation Counsel
Brooklyn, New York 11242                  of the City of New York
                                          100 Church Street
                                          New York, New York 10007
Gregory J. Cannata, Esq.                  By: Zachary B. Kass, Esq.
Alison Cannata-Hendele, Esq.
233 Broadway, 5th floor                   Attorneys for the City of New York
New York, New York 10279


Attorneys for the Debtor

**HONORABLE NANCY HERSHEY LORD**
**UNITED STATES BANKRUPTCY JUDGE**

Before the Court is a motion by Wildy Narcisse, the former debtor (the "Debtor") seeking

an order to reopen his chapter 7 case (the "Motion to Reopen") pursuant to section 350(b) of the

Bankruptcy Code and Federal Rule of Bankruptcy Procedure 5010.    The Debtor seeks reopening

fifteen years after his bankruptcy case was closed to allow a chapter 7 trustee to prosecute a

previously undisclosed personal injury action (the "Personal Injury Action") against the City of

New York (the "City").

On March 25, 2012, the Debtor filed the Motion to Reopen (ECF Nos. 9, 10).    In support

of the Motion to Reopen, the Debtor claims that the failure to disclose the Personal Injury Action

in his bankruptcy filings was an omission made in good faith.    At the time of the bankruptcy

filing, he argues, he was represented by incompetent bankruptcy counsel.    He was unable to

evaluate his counsel's performance, he says, because he was suffering from a traumatic brain

injury sustained in the accident underlying his personal injury claim.    The Debtor claims that he

had no motivation to conceal the Personal Injury Action from his creditors.

On April 16, 2012, the City of New York (the "City") filed opposition to the Motion to

Reopen (the "Opposition") (ECF Nos, 12, 13).    The City argues that the Motion to Reopen should

be denied because the Debtor cannot show that his failure to disclose the Personal Injury Action

was made in good faith.    The City further argues that there will be no benefit to creditors if the

case is reopened.    On April 23, 2012, the Debtor filed a Reply to the Opposition (ECF No. 16).

On June 28, 2012, the Court held a hearing on the Motion to Reopen at which Rachel

Blumenfeld, Esq., counsel for the Debtor in this bankruptcy case, Gregory J. Cannata, Esq.,

counsel for the Debtor in the Personal Injury Action, and Zachary B. Kass, Esq., counsel for the

City, appeared and were heard.    On July 2, 2012, the Court entered an Order Scheduling

Evidentiary Hearing (ECF No. 21) which, after several adjournments, was heard on November 29, 2012 (the "Evidentiary Hearing").

Based on the entire record, including the testimony, exhibits and the arguments of counsel, and for the reasons set forth below, the Court concludes that the Debtor has shown cause to reopen his chapter 7 case.

## Jurisdiction

This Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b) and 157(b)(1), and the Eastern District of New York standing order of reference dated August 28, 1986, as amended by order dated December 5, 2012. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A). The following are the Court's findings of fact and conclusions of law to the extent required by Rule 52 of the Federal Rules of Civil Procedure, as made applicable by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## Background

On September 4, 1995, the Debtor alleges that while walking in a parade, he was hit by a police vehicle owned and operated by the City (the "Accident"), causing him to sustain a traumatic brain injury and other physical injuries.   Prior to the Accident, the Debtor, who was approximately 30 years old at the time, supported himself and his family working full time for a heath care agency.   Since the Accident, the Debtor has been unable to work and has been declared permanently disabled by the Social Security Administration.

On November 3, 1995, the Debtor, by his personal injury attorney, filed a Notice of Claim with the City alleging that it was liable for his injuries.   On January 26, 1996, the Debtor testified before an Examiner for the New York City Comptroller's Office regarding his Notice of Claim.

2

The Debtor was represented by counsel at that hearing.

***The Debtor's Bankruptcy Filing***

On November 25, 1996 (the "Petition Date"), the Debtor, represented by bankruptcy counsel, filed a chapter 7 petition in this Court.   John S. Pereira, Esq. was appointed the chapter 7 trustee in this case.   The Debtor did not list his claim against the City in his Schedules or Statement of Financial Affairs.[1]   The Debtor's Schedule F lists a total of $8,047.16 owed to six unsecured creditors.   Five of those creditors hold credit card debt and one bank holds a loan.   The Debtor's Schedule D lists a secured debt to the Internal Revenue Service of $800.   The Debtor listed assets of minimal value and claimed them all as exempt.

The Section 341 meeting of creditors was held on January 7, 1997, the Debtor was examined, and the meeting was closed.   The chapter 7 trustee filed a "Trustee's Report of No Assets–Debtor(s) Examined."   The Debtor received a discharge on June 6, 1997.   A final decree was entered and the chapter 7 case was closed on June 18, 1997.

***The City's Discovery of the Bankruptcy Case***

The Personal Injury Action was commenced in the New York state court on December 3, 1996.   The Debtor alleges that his personal injury attorney was unaware of his bankruptcy filing when the lawsuit was commenced.   The City interposed an Answer on January 3, 1997.   On November 11, 2010, the Debtor filed a Note of Issue and Certificate of Readiness, placing the Personal Injury Action on the state court trial calendar.

The City first became aware of the Debtor's bankruptcy filing in early February 2012 when the trial in the Personal Injury Action was scheduled to begin.   The City quickly took steps to

---

[1]  *See* Affirmation of Jonathan D. Klein in Support of the Opposition (the "Klein Affirm."), Exh. A (certified copy of the Debtor's bankruptcy case file); Debtor's Exh. 1 (same).

obtain the Debtor's bankruptcy case file from the federal archives.    On February 23, 2012, the

City moved in the New York state court to dismiss the Personal injury Action on grounds that the

Debtor lacked standing to maintain the action.    The City argued that Debtor's failure to list the

claim as an asset in his bankruptcy case caused the claim to remain the property of the bankruptcy

estate, thereby precluding the Debtor from pursuing the claim on his own behalf.    The Debtor

cross-moved in the New York state court for a stay so that he could move to reopen his bankruptcy

case and list the personal injury action as an asset.    The Debtor also moved in the New York state

court, for the first time, for the appointment of a guardian ad litem.    The New York state court

adjourned the trial and the City's motion to dismiss to give the Debtor the opportunity to make this

Motion to Reopen.

## Legal Discussion

### *Whether the City has Standing to Object to Debtor's Motion to Reopen*

In Debtor's Reply to the City's Objection to the Motion to Reopen, he claims that the City

lacks standing to object. The Debtor argues that the City's status as a defendant in the Personal

Injury Action, and that alone, does not make it a party in interest with respect to this bankruptcy

case.    The Debtor cites to *In re Sweeney*, 275 B.R. 730, 733 (Bankr. W.D. Pa. 2002) and *In re

Ayoub*, 72 B.R. 808, 812 (Bankr. M.D. Fla. 1987) in support of his position.    The City did not file

a response to the Debtor's objection to the City's standing in this matter.

While Bankruptcy Rule 5010 provides that a "case may be reopened on motion of the

debtor or other party in interest pursuant to § 350(b) of the Code," standing to oppose a motion to

reopen is not addressed by the Bankruptcy Code or the Bankruptcy Rules.    Similarly, the term

"party in interest" is not defined in the Bankruptcy Code or Bankruptcy Rules.    Section 1109(b) of

4

the Bankruptcy Code, applicable in chapter 11 cases, provides a list of examples of what persons or entities may be considered to be a party in interest "including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee." 11 U.S.C. § 1109(b). Who may be a party in interest, however, is non-exclusive. *See* 11 U.S.C. § 102(3) ("'includes' and 'including' are not limiting").

Courts differ in their determinations of whether a party who is a defendant in a state court action has standing to oppose the reopening of a bankruptcy case. *See In re Lewis*, 273 B.R. 739, 743 (Bankr. N.D. Ga. 2001) (state court defendants can oppose motion to reopen because of impact reopening would have on them on both forums); *In re Koch,* 229 B.R. 81, 82 (Bankr. E.D.N.Y. 1999) (defendant had standing as owner of property); *In re Riazuddin*, 363 B.R. 177, 182-83 (10th Cir. BAP 2007) (state court defendant did not have standing to oppose the motion because its liability would be affected by the state court action but not by the bankruptcy case); *In re Sweeney*, 275 B.R. at 733 (defendants do not have standing in bankruptcy case simply because they have standing in the state court action).

Here, the City, by its counsel, appeared and was heard at the initial hearing on the Motion to Reopen. The Court provided notice to the City of a further evidentiary hearing and directed both the Debtor and the City to submit pre-hearing pleadings. The City, by its counsel, appeared and was heard at the Evidentiary Hearing. The Motion to Reopen will likely have an effect on the continuation of the Personal Injury Action in the New York state court. *See In re Lewis*, 373 B.R. at 743. And, the City may become indebted to this bankruptcy estate if there is a recovery in the Personal Injury Action. These factors will, accordingly, impact the City. Bankruptcy Rule 2018 provides that the court may allow any "interested entity" to intervene in a bankruptcy case or "any

5

specified matter." FED. R. BANKR. P. 2018(a).    Based on the foregoing, the Court finds that the City has sufficient interest to be heard in the Debtor's Motion to Reopen.

The Court now turns to the Motion to Reopen and several principles of bankruptcy law which are fundamental to this Motion.

### Property of the Estate

The commencement of a bankruptcy case creates an estate which, subject to certain exceptions not relevant here, is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case.    11 U.S.C. § 541(a)(1).    *See Chartschlaa v. Nationwide Mut. Ins. Co.*, 538 F.3d 116, 122 (2d Cir. 2008), *cert. denied*, 129 S.Ct. 1534 (2009) (property of the bankruptcy estate encompasses "'[e]very conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative. . . . Contractual rights clearly fall within the reach of this section . . . as do causes of action owned by the debtor or arising from property of the estate.'" (internal citations omitted)).

Thus, at the moment the Debtor filed his petition, his claim against the City became property of his bankruptcy estate.    *See Hopkins v. Foothill Mt., Inc., (In re Hopkins)*, 346 B.R. 294, 303 (Bankr. E.D.N.Y. 2006) ("[I]t is well settled that prepetition causes of action are assets included within the meaning of property of the estate.").

### The Debtor's Duty to Disclose

To be sure, a debtor's duty to disclose all his legal and equitable interests in property is fundamental to the bankruptcy process.    Section 521 of the Bankruptcy Code sets forth a debtor's disclosure obligations at the commencement of the case.    Specifically, Section 521(a) requires the debtor to file a schedule of assets and liabilities, 11 U.S.C. § 521(a)(1)(B)(ii), which must include

6

all property that falls within the broad ambit of Section 541(a), including any unliquidated causes of action existing as of the commencement of the case.   *See Chartschlaa*, 538 F.3d at 122 (holding that an individual must "disclose all his interests at the commencement of a case. . . ."). This disclosure is "essential to the proper functioning of the bankruptcy system." *Id*.; *see also Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y 1996) ("The integrity of the bankruptcy system rests on full and honest disclosure by debtors of all of their assets."). Moreover, the debtor's duty to disclose "is a continuing one and does not end with the filing of the bankruptcy petition." *In re Lowery*, 398 B.R. 512, 515 (Bankr. E.D.N.Y. 2008).

### The Role of the Chapter 7 Trustee

In a chapter 7 case, property of the estate is administered exclusively by the designated fiduciary—the chapter 7 trustee*. See* 11 U.S.C. § 323**;** *In re Arana***,** 456 B.R. 161, 169 (Bankr**.** E.D.N.Y. 2011) ("Only the Chapter 7 trustee may administer property of the estate, including bringing actions on behalf of the estate."). Therefore, "during the pendency of a bankruptcy case, the debtor does not have standing to initiate or pursue an action based on a prepetition claim unless the trustee abandons it back to the debtor." *Id*. a169.

When a debtor fails to disclose an asset, the asset remains property of the estate until administered or abandoned by the trustee, even after the case was closed.   *In re Clark*, BAP No. CC–11–1322–KiMkH, 2012 WL 1911926, at *6 (9th Cir. BAP May 25, 2012); 11 U.S.C. § 554(d) (property not abandoned or administered remains property of the estate.)

> Abandonment presupposes knowledge.   Thus, there can, as a rule, therefore be no abandonment by mere operation of law of property that was not listed in the debtor's schedules or otherwise disclosed to creditors.   This principle is recognized in section 554(c) which provides that, unless the court orders otherwise, property of the estate that is neither abandoned nor administered in the case remains property of the estate.   Likewise, property which is improperly or ineffectively

abandoned remains property of the estate pursuant to section 554(d).

5 COLLIER ON BANKRUPTCY, ¶ 554.03 (16th ed. 2012).

The undisclosed Personal Injury Action was neither administered nor abandoned by the chapter 7 trustee.   Accordingly, the Personal Injury Action remains property of this bankruptcy estate and the chapter 7 trustee is the proper party in interest to prosecute the lawsuit.

***The Standards for Reopening***

Motions to reopen are governed by section 350(b) of the Bankruptcy Code and Bankruptcy Rule 5010.   Section 350(b) of the Bankruptcy Code states, in pertinent part that a "case may be reopened in the court in which such case closed to administer assets, to accord relief to debtor, or for other cause."   Bankruptcy Rule 5010 provides, in pertinent part, that "[a] case may be reopened on motion of the debtor or other party in interest pursuant to § 350(b) of the Code. . . ."

While the time for filing a motion to reopen a bankruptcy case is not limited by the Bankruptcy Code or the Bankruptcy Rules, courts recognize that the laches doctrine may bar reopening when there is unreasonable delay and prejudice to the affected party by the delay.   *See In re Arana*, 456 B.R. at 174 (citing *In re Stein* 394 B.R. at 16 and *Robins Island Pres. Fund, Inc. v. Southhold Dev. Corp.*, 959 F.2d 409, 423 (2d Cir. 1993)).   However, "[t]he mere lapse of time does not constitute prejudice, and '[a] court of equity must consider whether reopening a case would prejudice the adversary's position.'" *In re Stein*, 394 at 16 (quoting *Batstone v. Emmerling*) *In re Emmerling,* 223 B.R. 860, 964 (2d Cir. BAP 1997)).

Although the Bankruptcy Code does not provide a definition of "cause," courts have held that cause to reopen a bankruptcy case includes the need to amend schedules to add assets or creditors, or to commence lien avoidance actions.   *In re Stein*, 394 B.R. 13, 15 (Bankr. E.D.N.Y.

8

2008) (citing cases)); *see also Zinchiak v. CIT Small Bus. Lending Corp. (In re Zinchiak),* 406 F.3d 214, 224 (3d Cir. 1005) ("It is well recognized that a bankruptcy proceeding may be reopened to administer estate assets and to determine whether additional assets may be available for creditors of the estate."). And, as noted by the court in *Stein*: "When a case has been closed, courts have held that the court 'has a duty to reopen the estate whenever there is proof that it has not been fully administered,' and to permit the addition of an asset to the schedules." *In re Stein*, 394 B.R. at 16 (citing *Lopez v. Specialty Rests. Corp. (In re Lopez),* 283 B.R. 22, 27 (9th Cir. BAP 2002)(internal citations omitted).

A bankruptcy court has broad discretion in deciding whether to reopen a closed case. *In re Arana*, 456 B.R. at 172. The decision to reopen "invoke[s] the exercise of a bankruptcy court's equitable powers, which is dependent upon the facts and circumstances of each case." *Katz v. I.A. Alliance Corp. (In re I. Appel Corp.)*, 104 Fed. Appx. 199, 200 (2d Cir. 2004).

The Debtor, as the moving party, has the burden of establishing cause to reopen. *In re Arana*, 456 B.R. at 172 (citing *In re Mortensen*, 444 B.R. 225, 227 (Bankr. E.D.N.Y. 2011)). Factors used in determining whether to reopen a closed case include the benefit to creditors, the benefit to the debtor, the prejudice to the affected party, and other equitable factors. *In re Stein*, 394 B.R. at 15 (stating that "courts may consider equitable concerns" and "the benefit to the debtor, the prejudice to the affected entity and the benefit to the creditors") (internal quotation marks and alterations omitted); *In re Koch*, 229 B.R. 78, 85-86 (Bankr. E.D.N.Y. 1999).

The good faith or lack of good faith by the debtor is a significant factor. *In re Arana*, 456 B.R. at 172; *In re Koch*, 229 B.R. at 87-88 (observing that "[t]he lack of the element of good faith suggests an all too casual disregard for the disclosure requirements of this Court, and the fair and

equitable treatment of [the debtor's] creditors as called for by the Bankruptcy Code, since they did

not benefit from the reopening"); *In re Lowery*, 398 B.R. at 515 (citing with approval those courts

that conclude that "good faith is an important element that a court looks to in authorizing the

reopening of a bankruptcy case to include a lawsuit of the debtor").

***Demonstration of Good Faith and Cause to Reopen in This Case***

The Debtor argues that his case should be reopened to allow him to amend his bankruptcy

filings to include the Personal Injury Action because his failure to disclose its existence was an

omission made in good faith; the Personal Injury Action is an asset of the estate that should be

administered for the benefit of his creditors; and the City should not be permitted to receive a

windfall at the expense of creditors.

The City argues that the Debtor concealed the Personal Injury Action in bad faith. The

Debtor pursued the Personal Injury Action in his own name for some fifteen years notwithstanding

that he lacked standing to do so, the City claims, and only when the City discovered the existence

of the bankruptcy case did the Debtor file the instant motion. The City also points to the Debtor's

failure to disclose his claim on his petition and schedules when filed, failure to reveal the existence

of his claim at the Section 341 meeting of creditors, and failure to amend his schedules to disclose

the Personal Injury Action.   In sum, the City argues that the Debtor did not act in good faith

because he had knowledge of the undisclosed claim and had motive for concealment.

The City relies upon *In re Lowery*, 398 B.R. 512 (Bankr. E.D.N.Y. 2008) for its assertion

of bad faith.   In *Lowery*, the court denied the debtor's request to reopen her case some eight years

after closing in order to schedule a personal injury action.   The defendant in the personal injury

case, the City of New York, opposed the reopening.   Holding that the case should not be

10

reopened, the court stated that good faith of the debtor was an important factor to be considered in deciding whether to reopen the case. *Lowery*, 398 B.R. at 515. The court reasoned that "[t]he public interest in the systemic integrity of the bankruptcy process dictates that a bankruptcy court should withhold relief that encourages the concealment of assets by debtors." *Lowery*, 398 B.R. at 516. The court in *Lowery* found that the debtor did not act in good faith and that her omission was not inadvertent. *Id*. As discussed below, the facts and evidence pertaining to the Debtor's good faith are very different from the facts in *In re Lowery*.

In determining whether the debtor acted inadvertently or in bad faith, courts consider whether the debtor has knowledge of the potential claim or a motive to conceal it. *See In re Lowery*, 398 B.R. at 515-16 ("[t]he absence of good faith in nondisclosure may be inferred from the record. As a general proposition, a debtor's failure to satisfy a statutory disclosure duty may be deemed inadvertent or the product of an innocent mistake when the debtor either i) lacks knowledge of the undisclosed matter, or ii) has no motive for its concealment."); *In re Barger*, 279 B.R. 900, 905 (Bankr. N.D. Ga. 2002) (finding that "deliberate or intentional manipulation can be inferred from the record and that a debtor's failure to satisfy the statutory duty of disclosure is inadvertent only when in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment.") (internal quotation omitted).

### The Testimony and Other Evidence

During the course of the Evidentiary Hearing, three witnesses were presented by the Debtor. The Debtor testified on his own behalf and presented the testimony of Dr. Max Heinrich, a psychologist who was hired by the City to conduct a psychological examination of the Debtor on behalf of the City. The Debtor also presented the testimony of Dr. Paul Salkin, a psychiatrist who

11

has been treating the Debtor since the time of the Accident.   The City did not call any witnesses.

***The Debtor's Testimony***

The Debtor testified that prior to the Personal Injury Action he worked at a health care facility with mentally disabled children where he provided physical therapy and taught the children how to write.   On the day of the Accident, the Debtor remembered being struck by a police vehicle, the incident that allegedly caused his brain trauma and spending the night in the hospital.   After the Accident, he had physical pain in his back, shoulder and knees, the Debtor claims, as well as mental and emotional problems that included depression, suicidal thoughts, an inability to concentrate or read, and impaired memory.   The Debtor said that after his release from the hospital, he lived with his mother because he was unable to navigate such mundane tasks as cooking, shopping and handling money.   He also developed a stutter after the Accident that made communication difficult, according to the Debtor.

After the Accident, Debtor testified, he was unable to work.   He began to have financial problems. He was confused and needed help.   The Debtor recalled speaking with a bankruptcy lawyer two or three times about his financial problems, although he could not remember the name of the lawyer, and he recalled paying the attorney's fee, which his mother gave him.

The Debtor testified that when he met with the bankruptcy lawyer he told him that he was involved in an accident, that he had retained a lawyer to handle the Accident case, and that he had testified at a hearing in connection with the Accident.   The bankruptcy lawyer never discussed the relationship between the Accident and the bankruptcy filing with him, the Debtor said, nor did he explain that bankruptcy procedure required that a trustee be appointed to administer his assets.

All the Debtor understood about the bankruptcy process, he said, was that it would

discharge his outstanding debt.    All the necessary documents were completed by his lawyer and filled out by the time he met with him, the Debtor testified.    He signed the documents where his lawyer told him to sign, he said, without reading salient parts, including the declaration above his signature that the information provided was true and correct under penalty of perjury.

The Debtor testified that he was unaware that his Accident claim was an asset required to be listed in the bankruptcy filing.    He never told his personal injury lawyers about his bankruptcy case, he said, which was corroborated by Gregory J. Cannata, Esq., the Debtor's current personal injury lawyer.    Mr. Cannatta stated in his affirmation in support of the Motion to Reopen that he found no reference to the Personal Injury Action in the Debtor's file when he took over the lawsuit, and that the Debtor's bankruptcy filing was first brought to his attention by the City in February 2012 when the City moved to dismiss the Personal Injury Action.    The Debtor testified credibly that had he known he was required to list his claim against the City he would have done so because he would have "loved to pay [his creditors] back."

The evidence shows that at the time of the filing of his bankruptcy petition the Debtor was represented by Anthony Rahmanan, who subsequently surrendered his license to practice law in the face of disbarment.[2]    The evidence also established that the Debtor has been receiving psychiatric treatment from 1996 to the present time and that at and around the time the Debtor filed for bankruptcy, he was taking a host of psychogenic medications.[3]

---

[2]*See* Debtor's Exh. 2 (Decision of the Supreme Court, Appellate Division, First Judicial Department In the Matter of Anthony Rahmanan, an attorney and counselor-at-law: Departmental Disciplinary Committee for the First Judicial Department, Petitioner, Anthony Rahmanan, Respondent).

[3]Affirmation of Gregory J. Cannata, ¶ 4.

*The Testimony of Dr. Max Heinrich*

Dr. Max Heinrich, a psychologist who did work for the City, was called to testify by the Debtor at the Evidentiary Hearing.   He said that he was asked by the City to determine whether the Debtor had any organic brain damage resulting from the accident.   The examination took place early in 1997, and Dr. Heinrich submitted a report about the Debtor's condition dated March 20, 1997, to the City.[4]

Dr. Heinrich testified that the Debtor had limited memory at the time of his initial examination.   Debtor was unable to recall where he worked, the name of the president, or the day of the week, all suggesting memory impairment.   The Debtor was minimally alert, he said, with a markedly impaired attention span and ability to concentrate.   The Debtor was unable to follow what Dr. Heinrich was saying and had difficulty in responding to questions.   Dr. Heinrich said that the Debtor had difficulty reading even simple words, which he found to be a significant clinical finding.   The Debtor's speech was difficult to understand, he added, noting that this was significant because speech is often affected by cerebral damage.

Dr. Heinrich testified that he administered several standard psychological tests and his report indicated that the Debtor manifested bewilderment and perplexity in response to almost all test items.   The testing showed that the Debtor had severe impairment of certain aspects of brain functioning, including his sequential thinking, planning ability, short-term memory and verbal memory.   The testing also showed that the Debtor was suffering from a serious depressive disorder.

Dr. Heinrich concluded that the Debtor did not have the capacity to be dishonest, because,

---

[4]Debtor's Exh. 3 (Report of Dr. Max. Heinrich dated March 20, 1997).

the Debtor did not have enough cognitive processing ability to do the symbolic planning to mislead

anyone.   In Dr. Heinrich's opinion, the Debtor would not have been able in 1997 to understand the

details of an attorney's explanation of his legal rights, to analyze what the attorney told him, ask

probative questions, or read and understand legal forms.   The Debtor was "clearly suffer[ing]

from a dementia which has uniformly impaired all of his cognitive skills," Dr. Heinrich wrote in

his report.[5]

### The Testimony of Dr. Paul Salkin

Dr. Paul Salkin, the Debtor's treating psychiatrist, was also called to testify at the

Evidentiary Hearing regarding the Debtor's mental and emotional condition from June 1996, when

he first saw the debtor, to the present.   Dr. Salkin noted that he has been treating the Debtor for

more than 15 years.   He presently sees the Debtor once every four weeks.   Reports prepared by

Dr. Salkin about the Debtor's condition prepared from 1996-1998 were also admitted into

evidence.[6]

Dr. Salkin said that when he first examined the Debtor in June 1996 he was extremely

confused and depressed, had suicidal thoughts, experienced trouble sleeping, including

nightmares, and was extremely anxious and agitated.   The Debtor stuttered badly and was

difficult to understand, Dr. Salkin noted, adding that the Debtor's memory was severely impaired,

a sign that he was suffering from a cognitive defect stemming from traumatic brain injury.   After

examining the Debtor several times, Dr. Salkin said he reached three diagnoses as of September

---

[5]Debtor's Exh. 3 (Report of Dr. Max Heinrich dated March 20, 1997).

[6] Debtor's Exh. 4 (Report of Dr. Paul Salkin dated September 18, 1996); Debtor's Exh. 5 (No Fault Report of Dr. Paul Salkin dated September 18, 1996); Debtor's Exh. 7 (Report of Dr. Paul Salkin dated October 17. 1996); Debtor's Exh. 8 (Report of Dr. Paul Salkin dated November 14, 1996); Debtor's Exh. 11 (Report of Dr. Paul Salkin dated June 30, 1997); Debtor's Exh. 13 (Report of Dr. Paul Salkin dated May 14, 1998).

18, 1996: (1) post traumatic stress disorder; (2) brain trauma with cognitive dysfunction; and (3) depression.   At that time, he found that the Debtor's prognosis was poor—his disability was total and he was not likely to recover significantly.

During this initial period of June-September 1996, Dr. Salkin testified, it was his medical opinion that the Debtor was not competent to handle his legal affairs or daily life, and that did not have the capacity in 1996 to devise a plan to defraud his creditors.

In October 1996, Dr. Salkin testified that he made a further finding that the Debtor's disability was total because of the head injury and secondary brain trauma injury. He said that he helped the Debtor to obtain disability benefits by preparing a report dated November 14, 1996 for the New York State Department of Social Services.[7]   That contained his diagnoses of the Debtor: cognitive dysfunction and memory loss, loss of concentration, and post traumatic stress disorder with panic and depression.   His report indicated that the Debtor was taking antidepressant medication and had an abnormal EEG consistent with a diffuse cerebral dysfunction.   Dr. Salkin testified that at the time of the November 14, 1996 report he had no knowledge that the Debtor was proceeding with a bankruptcy case.

Dr. Salkin also testified that he reviewed the March 20, 1997 report of Dr. Max Heinrich and that he agreed with Dr. Heinrich's findings and conclusion that the Debtor suffered from a dementia which uniformly impaired all of his cognitive skills.

In June 1997, Dr. Salkin found that the Debtor's condition had deteriorated.   He had become even more seriously depressed that he had been initially, Dr. Salkin said, noting that the

---

[7]Debtor's Exh. 8 (Report of Dr. Paul Salkin dated November 14, 1996).

Debtor was having auditory hallucinations, that is, voices were telling him to kill himself.[8]   This finding caused Dr. Salkin to raise the dosage of the Debtor's antidepressant medication significantly and to recommend that the Debtor be admitted to a psychiatric hospital.   The Debtor was subsequently admitted to such a facility on January 31, 1998, and discharged on February 9, 1998.[9]

After his hospital discharge, Dr. Salkin said that the Debtor's condition worsened.   By May 1998,[10]   there was danger of the Debtor committing suicide due to post traumatic stress disorder with depression and cognitive dysfunction secondary to traumatic brain injury.   Again, Dr. Salkin found the Debtor's prognosis to be poor.

All of these findings led Dr. Salkin to conclude that the Debtor at the time the omission from his bankruptcy filing took place, was incapable of acting in bad faith or with fraudulent intent.   In order to commit a fraud, Dr. Salkin noted, one would need the mental ability to plan out whatever might be involved in an attempt to defraud.   Dr. Salkin testified that in his opinion the Debtor did not have that mental ability during the period 1996-1997 because of his mental confusion and memory difficulties. The Debtor did not have the level of ability to think clearly in order to deceive, Dr. Salkin said.

Dr. Salkin also testified that the Debtor during the period 1996-1997 did not possess the ability to understand his bankruptcy filings.   The Debtor would not have been able to comprehend the language of the Statement of Financial Affairs that requires a listing of all suits and

---

[8] Debtor's Exh. 11 (Report of Dr. Paul Salkin dated June 30, 1997).

[9] Debtor's Exh. 12 (Hospital Discharge Summary).

[10] Debtor's Exh. 13 (Report of Dr. Paul Salkin dated May 14, 1998).

proceedings to which the Debtor is or was a party, Dr. Salkin noted, or understand the language of

Schedule B which requires a listing of other contingent and unliquidated claims of every nature.

The Debtor was not capable of comprehending the nature of the declaration he subscribed to in his

bankruptcy filing that his answers were true under penalty of perjury, Dr. Salkin said.   Nor did the

Debtor have the ability to take exception to legal advice, Dr. Salkin stated, adding that if he was

advised by an attorney that he was required to tell the truth with respect to his bankruptcy filings,

the Debtor would not have been able to understand the concept. When asked if a chapter 7 trustee

had asked the Debtor at that time if he had the right to sue anyone, Dr. Salkin responded that the

Debtor would have had difficulty understanding the question, even though he was in the process of

suing the City.

Finally, Dr. Salkin testified regarding the Debtor's memory dysfunction from the time of

the bankruptcy filing and up to the present.   Dr. Salkin said that the Debtor's memory dysfunction

in 1996 was severe.   In recent months there has been some improvement in the Debtor's ability to

remember current events, but the Debtor's memory of past events remains severely impaired.

### *Whether the Debtor Had Knowledge of the Claim or Motive to Conceal Assets*

To demonstrate that the failure to disclose the Personal Injury Action was an omission in

good faith, the Debtor must show that he either (i) lacked knowledge of the undisclosed matter, or

(ii) had no motive for its concealment.   *In re Barger*, 279 B.R. 900, 905 (Bankr. N.D. Ga. 2002).

A "[d]ebtor's motive can be implied from what he would gain if he did not have to pay his

creditors."   *In re Meneses*, No. 05–86811–ast, 2010 WL 813975, at *4 (Bankr. E.D.N.Y. March 3,

2010).   Here, the total amount of claims in this case is $8,847.16, less than 1% of the $1 million in

damages sought in the Debtor's Personal Injury Action.   Even if the Debtor had the mental

18

capacity to devise a scheme to defraud his creditors, it is unlikely that he would jeopardize such a substantial recovery to keep for himself the minimal amount he owed to his creditors.

The Debtor's failure to disclose the Personal Injury Action is not equivalent to a concealment of it. The Debtor has been treated continuously for traumatic brain injury since the time of the Accident. Both Dr. Heinrich, the City's own expert, and Dr. Salkin, the Debtor's primary physician since 1996, substantiated through credible testimony and documentary evidence that the Debtor has suffered significant and debilitating mental impairment that impedes his capacity to understand legal proceedings or to read and comprehend legal documents.

The Debtor retained bankruptcy counsel to advise him and help him with the bankruptcy proceeding. He was not able to safeguard his legal rights without attorney assistance because of his brain injury. It would be patently unfair under these facts to attribute the bankruptcy attorney's failure to include the Debtor's claims against the City in the bankruptcy filings to the Debtor.

There was no evidence that the Debtor's omission was motivated by bad faith or fraud or that it was in any way an attempt to profit at the expense of the Debtor's creditors. Rather, the testimony shows that while the Debtor knew he had the Accident, he did not understand his obligation to disclose the Personal Injury Action in his bankruptcy filings, and he did not have the capacity to devise a plan to defraud his creditors.

Based upon the uncontroverted evidence, the Court finds that the Debtor has established that his failure to disclose the Personal Injury Action in his bankruptcy filings was inadvertent and an omission made in good faith.

***Benefit to the Debtor***

19

The benefit to the Debtor of reopening this case is evident.   The Debtor alleges that he sustained serious injuries as a result of the Accident.   Reopening this case would allow the chapter 7 trustee to appear in the Personal Injury Action as the proper party plaintiff and to continue to pursue the action on the merits.   And, if the trustee recovers more than the $8,847.16 in claims and the costs of administration, the Debtor may benefit from any surplus.   Thus, benefit to the Debtor favors reopening.

### Prejudice to the City of New York

There is no doubt that the delay in filing the Motion to Reopen was significant.   However, the evidence does not show any prejudicial consequences to the City by the delay.   There are no allegations that the delay resulted in loss of evidence or increased difficulties in discovery in the Personal Injury Action.   The Personal Injury Action was commenced in the New York state court in 1996, and was not ready for trial until February 2012, some sixteen years later.   That delay was the result of the normal process of the New York state court system and would have occurred whether it was the Debtor or a chapter 7 trustee who was prosecuting the lawsuit.   Indeed, the City would have had to defend the action regardless of who was prosecuting it.

Moreover, there is no evidence that there was any intent by the Debtor to delay filing this Motion in order to obtain a tactical advantage in the Personal Injury Action.   There was no evidence to suggest that the Debtor and his personal injury attorney pursued the Personal Injury Action with knowledge that the action was required to but was not scheduled or administered in this bankruptcy case.   The uncontroverted medical testimony showed that the Debtor did not have the capacity to understand that he had a continuing obligation to disclose his claims against the City in his bankruptcy case.   The Debtor similarly did not have the capacity to understand that his

20

bankruptcy case should have been disclosed to his personal injury attorney.    The evidence shows that the Debtor's personal injury attorney first became aware of this bankruptcy case when the City moved to dismiss the Personal Injury Action and this Motion to Reopen was filed immediately thereafter.

    If this case is reopened, the City will be required to defend the Personal Injury Action on the merits—but that does not amount to legal prejudice.    *In re Emmerling*, 223 B.R. at 869.    As noted by the *Arana* court: "[I]f this case is not reopened, [the City] may receive a windfall to the extent that the [Personal Injury Action] may well be dismissed based on a technical defense that is far afield from the merits of the claims and defenses."    *In re Arana,* 456 B.R. at 177.

    Finally, while granting this Motion to Reopen may impact an estoppel defense that may be asserted by the City in the pending Personal Injury Action, this too does not amount to prejudice. *See In re Stein*, 394 B.R. at 18; *In re Phelps*, 329 B.R. 904, 910 (Bankr. M.D. Ga. 2005) (defendants' loss of an estoppel defense requiring them to defend an action on the merits, "is no prejudice at all.").[11]

    For these reasons, the Court finds that lack of prejudice to the City favors reopening this bankruptcy case.

---

[11]"The doctrine of judicial estoppel prevents a party from asserting a factual position in one legal proceeding that is contrary to a position that it successfully advanced in another proceeding." *Rodal v. Anesthesia Group of Onondaga, P.C.*, 369 F.3d 113, 118 (2d Cir. 2004). As noted by the court in *In re Arana*: "New York state courts have held that judicial estoppel does not apply when a bankruptcy case is reopened under Section 350." *In re Arana*, 456 B.R. at 171, n.1 (citing *Miller v. Berti*, 1 A.D.3d 885, 885-86, 767 N.Y.S.2d 729 (N.Y. App. Div. 4th Dep't 2003); *Koch v. Nat'l Basketball Ass'n*, 245 A.D.2d 230, 231, 666 N.Y.S.2d 630, 631 (N.Y. App. Div. 1st Dep't 1997).   This is because "[t]he doctrine of judicial estoppel, which in a bankruptcy context, bars a party from pursuing claims not listed in a bankruptcy proceeding that resulted in the party's discharge does not apply in the absence of a final determination in the bankruptcy proceeding endorsing the party's inconsistent position concerning his or her assets. [T]he reopening of the bankruptcy proceeding . . . revived the original proceeding and all the procedural and substantive rights of the debtor . . . and thereby nullified the final determination upon which a judicial estoppel could be predicated." *Koch*, 245 A.D.2d at 231, 666 N.Y.S.2d at 631) (internal citations omitted).

*Benefit to Creditors*

Here, the Debtor is not seeking to reopen his case in order to add a creditor or a debt to ensure that the previously omitted debt would be discharged.   Rather, the Debtor seeks to add an asset for the benefit of the estate.   The Debtor's creditors did not receive a distribution when this case was closed.   If this case is reopened to allow the Personal Injury Action to be administered by a trustee, the trustee will provide notice to the creditors and a deadline by which to file proofs of claim.   Assuming the trustee recovers on the Personal Injury Action, the creditors, who are owed $8,847.16, will likely receive total payment.   "A denial of the [Motion to Reopen] would deprive Debtor's creditors of an opportunity to share in the fruits of any recovery [the trustee] may obtain." *In re Daniel*, 205 B.R. 346, 348 (Bankr. N.D. Ga. 1997).

The City claims that the Debtor's creditors are all institutional creditors who have presumably written off the debts.   Therefore, the City argues, it is extremely unlikely that the creditors here will be able or motivated to file proofs of claim.   However, as noted by the court in *In re Arana*, "a trustee ought to be given an opportunity to provide notice to creditors, and creditors ought to be given the opportunity to file claims."   *Arana*, 456 B.R. at 176.   For these reasons, the Court finds that there is no harm to creditors and the potential benefit to creditors weighs in favor of reopening this case

*Limiting Any Monetary Recovery to the Debtor*

During closing argument at the Evidentiary Hearing, the City focused for the first time on remedy and suggested that should the Court grant the Motion to Reopen, the reopening be limited to allow the chapter 7 trustee to pursue the Personal Injury Action and limit any monetary recovery to the sums needed to pay creditors and the chapter 7 trustee's expenses.   "Where a debtor has

acted in bad faith or otherwise engaged in inequitable conduct, [the determination as to whether to reopen a bankruptcy case] requires consideration of an appropriate remedy."   *In re Arana*, 456 B.R. at 165.   As discussed above, the Court finds that there was no motive by the Debtor to conceal the Personal Injury Action and that the Debtor's nondisclosure was inadvertent and made in good faith.   Accordingly, there is no need to consider limiting the Motion to Reopen in any manner, including one which limits the monetary award that may result from prosecution of the Personal Injury Action.

**Conclusion**

The extended lapse of time between the Debtor's Motion to Reopen and the closure of his chapter 7 case demands a compelling reason for this Court to reopen the case.   *See In re Lowery*, 398 B.R. at 515.   The unique facts here, fully supported by credible testimony and other documentary evidence create a strong foundation for compelling reasons to reopen this bankruptcy case.

There was no evidence of fraud or intentional concealment of the Personal Injury Action by the Debtor or of bad faith on his part.   To the contrary, the Debtor's demeanor while testifying and the compelling medical testimony persuaded this Court that the Debtor's omission in disclosing the Personal Injury Action in his bankruptcy filings, albeit for some fifteen years, was attributable to the Debtor's severe mental incapacity and inadequate legal representation at the time of the filing of his bankruptcy case coupled with his lack of capacity to safeguard his legal rights, not from an intentional scheme to defraud his creditors. Moreover, the medical testimony overwhelmingly supports a finding that the Debtor did not have the capacity to understand his continuing duty of disclosure.

24

After weighing the factors and considering the Debtor's good faith actions, the Court finds that (i) the creditors would benefit from allowing the Debtor to reopen the case because they never received a distribution but likely would if the chapter 7 trustee prevails in the Personal Injury Action; (ii) the Debtor would benefit from being allowed to reopen his case because he would be able to continue the Personal Injury Action, seek any applicable exemption and receive any funds remaining after a distribution to creditors and payment of the chapter 7 trustee's costs and expenses; and (iii) the City would not be prejudiced beyond the extent to which it would be required to defend the Personal Injury Action on the merits.

Accordingly, the Court finds that the Personal Injury Action is a potentially valuable asset that should be administered for the benefit of creditors. The Debtor's case will be reopened to allow him to amend his bankruptcy filings to include the Personal Injury Action.   The chapter 7 trustee shall be re-appointed to administer the Personal Injury Action and the proceeds of that action, if any.   A separate order shall be issued forthwith.



**Dated: March 29, 2013**
    **Brooklyn, New York**

    _Nancy Hershey Lord_
         **Nancy Hershey Lord**
    **United States Bankruptcy Judge**